IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(TULSA DIVISION)

| | | |
|---|---|---|
| CANDACE MILLER and | § | |
| GEORGE MILLER, | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 03CV 393K (J) |
| | § | |
| GLAXO SMITHKLINE, | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

FILED JUN 0 6 2003
Phil Lombardi, Clerk
U.S. DISTRICT COURT

## COMPLAINT

NOW COME, CANDACE MILLER and GEORGE MILLER, and file this suit against Defendant GLAXO SMITHKLINE, complaining about the personal injuries to Candace Miller.

### Nature of the Case

1.  This is an Oklahoma diversity, products liability and personal injury case arising out of an accident on or about March 27, 1998, in Tulsa, Oklahoma. At the time of her injuries, Mrs. Miller was under the influence of a powerful, serotonergic, psychotropic drug, manufactured and marketed by the Defendant, or, alternatively, was suffering withdrawal effects from this medication.

### Parties

2.  Plaintiff Candace Miller is a resident of Oklahoma. Thus, she is an appropriate party to allege claims on her behalf. She brings this suit in her own capacity to recover damages for life-altering injuries to herself. Her husband, George

Miller, brings claims, derivatively, for his own loss of income, value of nursing services, and loss of consortium, all of which he suffered as a result of the incredible injuries to his wife.

3. Defendant Glaxo SmithKline [hereinafter GSK] is a British owned and controlled pharmaceutical company with dual American headquarters in Philadelphia, Pennsylvania and North Carolina. It manufacturers and markets a serotonergic, psychoactive medication called Paxil.

## Jurisdiction and Venue

4. Jurisdiction is based on diversity of citizenship. 28 U.S.C. §1332. The amount in controversy is substantially in excess of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. The actions giving rise to this cause of action happened within this District. Therefore, venue is permissible in this District pursuant to 28 U.S.C. §1391.

## Facts

It has become necessary to file this suit as a result of the following facts.

5. Paxil is a powerful, mind altering drug which is specifically designed and marketed to alter a person's serotonin system. For years it has been known that serotonin functioning is directly related to aggression and violence, both directed at oneself and at others.

6. Paxil undoubtedly helps the majority of patients who take it. Unfortunately, however, there is a "small vulnerable subpopulation" of patients who are at an increased risk of violence and suicide as a result of taking Paxil and other SSRI drugs. Other patients experience similar symptoms during a period of withdrawal or "discontinuation" from the medication.

7. GSK has known about this small vulnerable subpopulation for years. And, yet, it has failed to conduct any prospective tests to determine the frequency of this phenomenon or to develop means of identifying and protecting those patients who are in this risk group. It has also failed to warn prescribing physicians, pharmacists, and patients about this risk or to instruct them on the known ways to reduce or ameliorate the risk. Additionally, it has denied that Paxil is addictive and has failed to warn physicians, pharmacists and patients about the risks of withdrawal or discontinuation symptoms, particularly in a "cold turkey" situation.

8. Many people have died as a result of these failures. And GSK has, in the only case which has gone to trial on the issue, been adjudicated as being responsible for those deaths. Specifically, on June 6, 2001, a unanimous federal jury found that Paxil can cause some people to become homicidal and/or suicidal and that it was a legal cause of four wrongful deaths in the State of Wyoming. The federal judge who presided over the trial denied GSK's post-trial motion for new trial, finding, *inter alia*

that there was scientifically reliable, legally admissible evidence to support the verdict. *Tobin v. SmithKline Beecham Pharmaceuticals*, 164 F.Supp.2d 1278 (D.Wy. 2001).

9. Because of the *Tobin* verdict, GSK is and should be collaterally estopped to deny either (a) that Paxil can, indeed, cause some individuals to commit suicide and/or homicide, and (b) that it is at "fault" for failing to warn and failing to test.

10. Candace Miller was born Candace Lee Johnson on January 25, 1949 in Mayo Clinic in Rochester, Minnesota. She married George Miller on January 17, 1976 in Roanoke, Virginia. Candace and George have two children, George Marcellus Miller born November 15, 1980 and Weston Johnson Miller born October 17, 1982. The family has resided at 1704 S. Owasso Avenue in Tulsa, Oklahoma since 1976. Mrs. Miller was employed as a speech language pathologist for Tulsa Public Schools.

11. Following the death of her mother in November, 1997, Candace began to experience depression and had difficulty sleeping. She was prescribed Paxil 20 mg on March 3, 1998 by her primary care physician, Dr. Michael Berkey and referred to a psychiatrist. The psychiatrist, Dr. Alan Hasegawa concurred with Dr. Berkey's treatment plan and, thus, he continued Paxil 20 mg. He provided her with three weeks of professional samples on March 5, 1998. At her follow up appointment,

Mrs. Miller reported a "dragged out feeling with the Paxil." In accordance with GSK's marketing pitch, Dr. Hasegawa recommended that she try to tough it out through the early adverse effects in the hopes that the medication would produce an antidepressant effect in the coming weeks. But Mrs. Miller's side effects were too intolerable for her. Accordingly, she refused Dr. Hasegawa's suggestion of a longer trial on the medication. Dr. Hasegawa discontinued Paxil on March 24, 1998. Mrs. Miller denied suicidal ideation at that time.

12.  Dr. Hasegawa, who had not been informed about the dangers of Paxil-induced violence/suicide, who had not been told about withdrawal symptoms, and who had not been instructed about the proper way to taper a patient off of Paxil, allowed her to quit cold turkey. Following her abrupt discontinuation of Paxil, Candace's family and friends report that her condition deteriorated dramatically. She "dropped like a stone" according to her husband. She became unable to sleep and would pace the floor. She was obsessively worrying about everything. She became focused on a camping trip that her son Marc was planning to take with friends that weekend. She was convinced that something bad was going to happen to Marc. She sat on his bed, rocking back and forth, crying and begging him not to go. This was extremely out of character given that Marc was an expert camper and had gone away

with friends several times in the past. She practically threw herself in front of the door to stop him from leaving.

13.     The morning of March 27th, Mrs. Miller woke up feeling anxious. Her husband had arranged things for her to do all day to keep busy. She was supposed to meet her mother-in-law for lunch but she never showed up. That day around noon, Mrs. Miller pulled over to the side of the road, left the car running and ran into traffic. No one is sure where she was going or why she was on Highway 75 so far from her home. Mrs. Miller does not remember. Witnesses say she ran out several times as if she was trying to get hit.

14.     This pattern of jumping in front of moving vehicles was similar to incidents which had occurred with patients on Paxil and other SSRI drugs in the past. GSK was aware of it.

15.     Prior to this incident, Candace Miller had no history of suicidal ideation or suicide attempts of any kind. She was described as happy, upbeat, and optimistic by her friends and family. She had a strong belief in God and commitment to her family. She never reported active suicidal ideation to anyone.

16.     As a result of the accident, Mrs. Miller sustained a traumatic brain injury causing damage to her executive and organizational skills. She remains unable to walk and is confined to a wheelchair. She is paralyzed on the left side of her body.

Her speech is slurred. She has problems with acid reflux requiring $300-400 of dental work per month. She is unable to drive or to leave the house by herself. Her family was forced to file bankruptcy as a result of her overwhelming medical bills. Candace's family and friends have lost many years with the active, fun-loving wife, mother, and friend they knew. Candace and George had hoped to retire at the beach in South Carolina. While they are extremely grateful to have her alive, they have all suffered a great loss.

17. After their family's tragedy, George and Candace employed counsel to assist them in trying to sort out their problems and to determine what factor or factors contributed in a material way to this bizarre suicide attempt. In late June of 2001 Candace and George Miller learned through their counsel about the *Tobin* verdict and, thereby, learned of the potential causal relationship of Paxil or Paxil discontinuation to their family's tragedy. This suit has been filed within two years of that discovery.

18. Defendant GSK is liable under one or more of three different theories of liability recognized under Oklahoma law. FIRST: Defendant GSK is strictly liable under the principles of Restatement (Second) of Torts, §§402A and 402B, and the new Restatement (Third) of Torts, for marketing defects and misrepresentations.

19.  SECOND: Defendant GSK' conduct is unreasonable, or negligent, and was a proximate cause of Candace Miller's enormous injuries. The negligence includes failure to warn, failure to test, failure to implement appropriate patient screening mechanisms, and over-promotion of Paxil. It also includes failure to act reasonably *vis-á-vis* the withdrawal or discontinuation side effects of the drug and to instruct physicians on how to taper a patient off of Paxil.

20.  THIRD: Defendant GSK is liable under a breach of warranty theory.

21.  <u>Statute of Limitations Allegations:</u> As noted above, this suit is being filed more than two years after Candace Miller's life-altering injuries, but less than two years after the Millers' discovery of the causal relationship between Paxil and those injuries and, hence, of their cause of action. Limitations is, therefore, circumvented via the discovery rule. Pleading alternatively, Plaintiffs would show that GSK's fraudulent concealment of the foregoing alleged problems with Paxil and Paxil withdrawal constitutes an additional basis for defeating a statute of limitations defense. Finally, Candace Miller's mental and physical incapacity in the wake of these life-altering injuries may serve to toll the statute.

22.  Plaintiffs sue to recover all of their medical bills and their lost wages and wage earning capacity. They also sue for all other economic damages which have been caused by this injury. In addition to these tangible, economic losses, Plaintiffs

sue for all intangible elements of damages permitted under the law. The monetary damages are in the millions; the *ad damnum* will be particularized upon request.

23. Plaintiffs also seek prejudgment interest as appropriate and costs of court.

24. Finally, if the trier of fact determines that GSK acted with intentional disregard or other requisite culpability, then Plaintiffs seek such additional damages, by way of punishment or example, as the jury shall deem appropriate.

25. Plaintiffs hereby invokes their right to trial by jury.

WHEREFORE, Plaintiffs pray that Defendant GSK be cited to appear and answer herein, and that, after a trial, they receive such monetary damages and other relief as is sought herein and appropriate under the law and the facts.

Respectfully submitted,

*/s/ Gary Richardson*

Gary Richardson
6555 S. Lewis, Suite 200
Tulsa, OK 74136
Telephone: 918-492-7674
Facsimile: 918-493-1925
Email: glrichardson@rsrwlaw.com

<u>Of Counsel:</u>
Andy Vickery
Texas State Bar No. 20571800
10,000 Memorial Drive, Suite 888
Houston, Texas 77024
Telephone: 713-683-1209
Facsimile: 713-683-1294
Email: <u>andy@justiceseekers.com</u>
[Admission *Pro Hac Vice* is being filed.]