# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CANDACE MILLER and GEORGE MILLER,  )<br>  )<br>Plaintiffs,  )<br>  )<br>vs.  )<br>  )<br>GLAXOSMITHKLINE, et.al.,  )<br>  )<br>Defendants.  )  | Case No. 03-CV-393-GKF/SAJ |

**OPINION AND ORDER**

Comes on for determination Plaintiffs' Motion for Leave to Supplement Record Regarding All Pending Motions [Dkt. # 148], referred by the District Court as to the narrow issue of whether Plaintiffs should be allowed to supplement expert report of Dr. Glenmullen ("Glenmullen"). Defendant Gloxosmithkline filed objection. The resolution of this issue could impact other motions currently pending before the District Court. The Court, having considered the submissions of counsel, arguments made at hearing, and the submitted reports, finds the issue should be resolved in favor of granting leave to supplement the expert report.

Plaintiffs initially sought emergency hearing, in part, based upon an upcoming trial setting in June, 2007. However, on May 4, 2007, the District Court struck the current schedule, to be rescheduled following *Daubert* hearing, which is now set on October 3, 2007. The rescheduling follows reassignment of the case to the newly appointed District Court Judge, the Honorable Gregory K. Frizzell, and appears to be the result of extensions of time granted at the request of the parties regarding pretrial motions. This provides

1

additional time within which Defendant can address the supplemental report as it relates to the various motions pending before the District Court.

Defendant asserts that Plaintiffs' supplemental report is untimely because it was raised four months after the deadline for expert disclosure. Plaintiffs' counsel urges the supplemental report is not only timely, but in fact, was filed before it was due. Specifically, Plaintiffs contend its submission preceded the date for pretrial disclosures pursuant to Fed.R.Civ.P 26 (a)(3), which under the now stricken schedule would have been May 11, 2007. Plaintiffs' counsel asks the Court to note the difference in supplementing the report as it relates to the *Daubert* issues and supplementing the report as it relates to other motions pending before the District Court.  Plaintiffs urge the supplemental information provided could be addressed at the evidentiary hearing which will be held on *Daubert* motions. Plaintiffs further advised that the supplementation is not crucial to the resolution of the summary judgment issues and as to those, it would only be "icing on the cake."

Plaintiffs presented a chronology of events in this case, beginning with the 1998 incident in which Plaintiff Candace Miller jumped into the path of interstate traffic in an apparent suicide attempt.[1] Plaintiffs referenced rulings in similar cases in other districts/states involving the issues raised herein, including a Wyoming case in which a Plaintiff's verdict was entered on June 6, 2001. The Wyoming case was tried by Plaintiffs' counsel in the case at bar. The verdict was based, in part, on the jury's affirmative response to a special interrogatory submitted by Defendant.  Plaintiffs urge that this put Defendant on notice that a correlation had been established between ingestion of Paxil and

---

[1] Miller threw herself into the path of one vehicle which was able to avoid striking her. She then successfully threw herself into the path of a second vehicle.

violent behavior toward oneself and/or others.  Accordingly, Defendant cannot now claim surprise.

Plaintiffs further urge the new information contained in the supplemental report merely provides corroboration for the expert's original opinions regarding general and specific causation which were provided to Defendant prior to his deposition in this case through two written expert reports.  Plaintiffs assert Defendant was aware of the facts as early as 1989, when the new drug application for Paxil was completed by Defendant. The application was supported by clinical studies which included a two-week "wash-out" phase where the participants were given placebo pills to allow any other medications they had been taking to clear their systems. Some participants remained on placebos following the two week period and others were given Paxil. Plaintiffs state that adding the wash-out phase skewed the clinical results because the suicides which occurred during the wash-out phase were included in the total placebo suicide rates, thereby making the suicide rates of those on Paxil appear lower than they actually were. The motivation for this was financial. A competitor, Prozac, the first of this type of drug, had already been released in January, 1988 and became an immediate commercial success. Plaintiffs cite to the testimony of Defendant's CEO to affirm that including the wash-out period is improper.

Plaintiffs state that by February, 1990, a public furor broke out when Prozac article was released by Harvard researchers warning of a suicide link. In the fall of 1990, FDA asked for report and analysis. In May, 2001, the document was placed in evidence in the Wyoming trial.  Plaintiff's counsel represented to the Court that he asked at least one question in regard to the document about wash-outs.  This was not a major focus of that trial, however, because it was not until April 29, 2001, that Defendant filed its study with the

FDA. It is this study which Plaintiffs urge is the major focus of Glenmullen's supplemental report. Plaintiffs assert they did not focus on the report at the time and that its significance did not become as important until the various versions and rewording/reworking of the report prior to its release became known. Plaintiffs urge these establish Defendant's intent to mislead.

Plaintiffs report that the 7 1/2 hours of deposition in the case at bar of Glenmullen was equally divided between questions regarding general causation and specific causation. Defendant marked the study as Exhibit 59 to the deposition and Plaintiffs' counsel points to page 143 of the deposition wherein he asked if that was the study with the wash-out issue, to which he received an affirmative response from Defendant's counsel. However, no further discussion of this point was had.

Plaintiffs urge no surprise or prejudice because the supplemental report is not based upon opinion, but facts which came from Defendant's own documents and people that corroborate Glenmullen's original reports. Plaintiffs also assert Glenmullen's decision to file a supplemental report was reached as he was preparing to be deposed by Defendant on January 7, 2007, in another Paxil case. It was in reviewing the documents for that deposition that Glenmullen decided that in order for his report to be complete, it needed to be supplemented. When Defendant was presented with the supplemental report in early January, which Plaintiff asserts is virtually the same report as the supplemental report in this case, Defendant elected not to go forward with the January 7 deposition. It was rescheduled for February 9, 2007. The February deposition was then cancelled by Defendant. Plaintiffs state they have no objection to a second deposition of Glenmullen.

The Court finds, after reviewing the reports themselves, that the supplemental report

could have been provided sooner. However, the Court accepts Plaintiffs' representation that the failure to raise the issue earlier or to include it in the original report was the result of the volume of information in this case and Plaintiffs' belief that the supplemental report expands the factual support for the original opinions. These reasons, standing alone, would not justify allowing the supplemental report. However, the Court is convinced from the totality of the arguments presented, that the issue does not represent a surprise to Defendant which would create prejudice. Plaintiffs cite to the discussion of the issue in Dr. Healy's deposition and expert report, to which Defendant refers in support of the argument that the information was available well in advance of the supplemental report. The other side of that sword is that it was known to Defendant through Dr. Healy, but more importantly, from Defendant's own documents. The Court finds that the supplemental report complies with Fed.R.Civ.P. 26 (e)(1).

Defendant asserts the issue has previously been decided in its favor in this district by Magistrate Judge Paul Cleary in *Quarles v. United States of America*, Case No. 00-CV-913 CVE-PJC, slip op. (N.D. Okla., Dec. 5, 2006). This Court finds *Quarles* is distinguishable. The expert in that case performed independent testing and supplemented his report on that data. This would not have been available or known to Defendant.

When questioned by the Court regarding what prejudice would result should the supplementation be allowed and the trial date continued, Defendant Glaxo SmithKline responded the prejudice comes in time and money which will be required to respond to the issues raised. Defendant urged the prejudice created will depend upon the time the Court allows Defendant to prepare for trial in light of the supplemental report. As a specific example, Defendant states the supplemental report was submitted after the *Daubert*

5

motions were filed and at issue. The Court finds the new schedule entered by the trial court aids in the resolution of these issues, particularly in light of the fact that much of the information on which the supplemental report is based comes from Defendant's documents, of which the record reflects Defendant was aware. Upon questioning by the Court, Defendant admitted that the wash-out issue had been previously confronted, but not through this witness. Defendant will be allowed to supplement its *Daubert* motions and to take a supplemental deposition of Glenmullen.

The Court concludes leave should be granted to supplement expert report. The question of whether the supplemental expert report is supported scientifically is reserved for resolution in connection with the District Court's ruling on the *Daubert* motions.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Leave to Supplement Record Regarding All Pending Motions [Dkt. # 148], is granted as to the narrow issue of whether Plaintiffs should be allowed to supplement expert report of Dr. Glenmullen. Plaintiffs are directed to file supplemental pleading within 20 days of the date of this Order addressing how the supplemental expert report impacts the motions currently pending before the District Court other than the *Daubert* motions. Defendant shall have 18 days within which to respond and Plaintiffs shall then have 14 days within which to reply. The parties are directed to submit an agreed schedule for supplementation of *Daubert* motions and scheduling the deposition of Glenmullen.

DATED THIS 5th DAY OF JUNE, 2007.

Sam A. Joyner
United States Magistrate Judge